UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMMIE DARNELL GORDON, II,

Plaintiff,

v.                                                  Case No. 3:15cv396-LC-HTC

COLONEL CARTER, et al.,

Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF Doc. 132).[1] Plaintiff has submitted an opposition (ECF Doc. 150). The matter has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. 636 and Local Rule 72.2(c).   Upon consideration, the undersigned recommends that the Motion be DENIED as to Plaintiff's claims for compensatory and punitive damages for violation of his Eighth Amendment rights.   The Motion also should be DENIED as to Plaintiff's claims against Marinin.   The undersigned recommends that the Motion be GRANTED as to Plaintiff's claims against Defendants for (1) failure to intervene or protect as to

---

[1] The motion is filed on behalf of Defendants Nelson, Trevino, Cassidy, Carter, Tolbert, Marinin, Paul and Lee.

all Defendants except Marinin and Paul; (2) retaliation; (3) violation of the Equal

Protection Clause; and (4) conspiracy.

## I.   FACTUAL BACKGROUND

Plaintiff, an inmate currently incarcerated at Santa Rosa Correctional

Institution ("SRCI"), files this suit against the Defendants seeking monetary

damages[2] for an alleged excessive use of force that occurred on June 16, 2015, while

Plaintiff was incarcerated at Century Correctional Institution ("Century CI").  The

facts that follow are taken from Plaintiff's deposition testimony and second amended

complaint.

On June 16, 2015, Plaintiff fled from Sergeant Kent as Kent was trying to

conduct a pat down search of Gordon for contraband.[3]  Plaintiff admits he was in

possession of contraband and fled from officers to cause a disturbance, thereby

giving himself an opportunity to discard the contraband.[4]  Plaintiff eventually

---

[2] Plaintiff seeks compensatory, punitive, and nominal damages as well a declaration and criminal charges.  ECF 109 at 20.  Plaintiff's request for criminal charges is not the type of relief that is available under 28 U.S.C. § 1983.
[3] Kent fell during the chase and suffered injuries, requiring him to be carried away on a stretcher. Kent is not a defendant to this action.
[4] Plaintiff claims that he was in possession of a form of synthetic grass, which he was selling.  ECF Doc. 132-1 at 13-14, 16.  He states, "they said it was Spice, but it wasn't Spice."  *Id.* at 13.  Right after the attack, Plaintiff claims he told Defendant Lee he was under the influence of "Spice," but he alleges that he only said that to protect himself from being beaten further.  ECF Doc. 109 at 10.

surrendered to Defendant Trevino, when a door closed on him and he ran out of areas to run.

Plaintiff claims Defendants either participated in using force, encouraged others to use force or failed to intervene to protect him after he "peacefully submitted" to Trevino.  Specifically, Plaintiff alleges that Defendants Nelson and Cassidy[5] held him in a "double shoulder bar," which resulted in pain to his back; that Defendant Marinin told officers to "deal with him out of my sight now" and approved of the officers' use of a double shoulder bar hold; that Defendant Carter told officers to "scrape his head up"; that Defendants Nelson and Cassidy rammed his head into the medical building's front door and into a wooden podium and another door; that Defendant Bolen yelled racial epithets at him and punched him in his head with a closed fist; that Defendant Cassidy tried to dislocate the bottom of his jaw; and that Defendants Nelson, Cassidy, Trevino, Sims and Lee slammed his body and head onto a concrete floor and repeatedly punched him.  He also claims that Defendant Smith, (who has not yet been served) observed what occurred but

---

[5] In his second amended complaint, Plaintiff states that it was Nelson and Cassidy who held him in a "double shoulder bar."  ECF Doc. 109 at 8.  In his response in opposition to Defendants' motion, he states that it was Nelson and Tolbert.  ECF Doc. 150 at 2.  This same discrepancy applies to whether Tolbert or Cassidy rammed his head into a wooden podium (*compare* ECF Doc. 109 at 9 and ECF 150 at 2) and tried to break his bottom jaw (*compare* ECF Doc. 109 at 10 and 150 at 2).

failed to intervene and that Defendant Paul was ordered not to turn the cameras on during the use of excessive force.

Defendants move for summary judgment on Plaintiff's claims for compensatory and punitive damages on the ground that Plaintiff suffered no physical injury and, thus, is entitled only to nominal damages of $1.00. Defendants also move for summary judgment on Plaintiff's failure to intervene or protect claim on the ground that if they are alleged to have perpetrated the excessive force they cannot also be liable for failure to protect or intervene. Additionally, Defendant Marinin moves for summary judgment on the supervisory liability claim. Finally, Defendants move for summary judgment on Plaintiff's retaliation, Fourteenth Amendment and conspiracy claims. In support of their motion, Defendants rely on Plaintiff's medical records from the incident and his deposition testimony.

In Plaintiff's opposition, Plaintiff argues that summary judgment should be denied on the Eighth Amendment claim because he has shown that he has suffered more than a *de minimis* injury. Plaintiff argues the motion should be denied on his failure to protect/intervene claim as to Defendants Smith and Paul; and that he has stated facts to support a conspiracy claim as to all Defendants, except Defendant Smith. Plaintiff concedes, however, that judgment is appropriate on his First Amendment retaliation claim and his Fourteenth Amendment equal protection claim.

Case No. 3:15-cv-396-LC-HTC

## II.    SUMMARY JUDGMENT STANDARD

To prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 248 (1986) (emphases omitted). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.; accord Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998 (11th Cir. 1992).

The Court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust Co. v.*

*Fidelity and Deposit Co.,* 750 F.2d 838, 841 (11th Cir. 1985)).  The Court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson,* 477 U.S. at 249–50 (citations omitted).  "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson,* 477 U.S. at 242).  "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment.  *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000).

III.     **DISCUSSION**

A. **Compensatory and Punitive Damages**

It is well settled in the Eleventh Circuit that an incarcerated individual cannot recover compensatory or punitive damages for a constitutional violation unless he can demonstrate a more than *de minimis* physical injury.  *See Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) (collecting cases construing § 1997e(e) of the PLRA).  Where the physical injury is *de minimis* or, in some circumstances, where there is no physical injury the plaintiff can only recover nominal damages.  *Id*. Although the Eleventh Circuit has not adopted a definition of "*de minimis*," the court has acknowledged an injury is more than *de minimis* if it is "an observable or

diagnosable medical condition requiring treatment by a medical care professional". *Thompson v. Sec'y, Fla. Dep't of Corrections*, 551 F. App'x 555, 557 n.3 (11th Cir. 2014). Cuts, bruises, and abrasions arising from use of force are typically deemed *de minimis* injuries. *See, e.g.*, *Nolin v. Isbell*, 207 F.3d 1253, 1255, 1258 (11th Cir. 2000) (bruising to Plaintiff's forehead, chest, and wrists was *de minimis* injury); *Moffett v. Hagan*, No. 6:15-CV-108, 2016 WL 205402, at *4 (S.D. Ga. Jan. 15, 2016), *report and recommendation adopted*, No. 6:15-CV-108, 2016 WL 447623 (S.D. Ga. Feb. 4, 2016) (collecting cases and concluding that broken or bruised fingernail and pain and swelling in hand caused by slamming of tray flap on inmate's arm was *de minimis* injury); *Parker v. Dubose*, No. 3:12CV204/MCR/CJK, 2013 WL 4735173, at *2 (N.D. Fla. Sept. 3, 2013) ("Plaintiff's alleged black eye, bloody lip, scrapes, abrasion and 'backpains' do not amount to more than *de minimis* physical injury . . . .").

After reviewing Plaintiff's deposition, second amended complaint, and medical records, the undersigned finds that a reasonable jury could find that Plaintiff suffered a more than *de minimis* physical injury from Defendants' conduct.[6] *See Norfleet v. Taylor*, No. 3:16CV413/MCR/EMT, 2017 WL 7054010, at *17-18 (N.D.

---

[6] *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in [a prisoner's] sworn pleading are sufficient and … a separate affidavit is not necessary."); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).

Fla. Nov. 27, 2017), *report and recommendation adopted*, No. 3:16CV413/MCR/EMT, 2018 WL 564859 (N.D. Fla. Jan. 25, 2018) (finding genuine issue of material fact exists regarding whether Plaintiff's alleged physical injuries were *de minimis*). First, as Defendants note, the medical records show that Plaintiff suffered from a "contusion (swelling)" at the right side of his right eye area, and a black eye. Second, in his second amended complaint, Plaintiff complains of "contusions (swelling) right side of head and right eye area 4-4.5 cm, severe headaches, mild nausea, back pain, mild back spasms and strained muscle approx. 3 cm x 3 cm near spine, behind the ear contusion approx. 25 mm." ECF Doc. 109 at 18. A concussion and migraine headaches may be considered more than *de minimis* injuries. *See Flanning v. Baker*, No. 5:12cv337/MW/CJK, 2016 WL 4703868, at *6 (N.D. Fla. Aug. 16, 2016) (unpublished), *report and recommendation adopted by* 2016 WL 4703862 (N.D. Fla. Sept. 7, 2016); *Payne v. Dickerson*, 334 F. App'x. 629, 631 (5th Cir. 2009) (stating plaintiff "made sufficient allegations that he suffered more than a *de minimis* injury as a result of the alleged excessive use of force as he alleges that he was thrown head first into a ditch and that he now suffers chronic migraine headaches"). Third, in his deposition, Plaintiff testified he has back pain, possibly a slipped disk, blunt trauma, a black eye, multiple contusions, a chipped tooth and a concussion. ECF Doc. 132-1 at 89-92. A concussion has been held to be more than a *de minimis* injury. *See e.g., B.J.R. ex rel. Garcia v. Golgart*,

Civil No. 11-1105 (JRT/SER), 2013 WL 3455598, at *8 n.3 (D. Minn. July 9, 2013)

("A concussion is more serious than a back contusion with no bruising or swelling

and no acute distress, relatively minor scrapes and bruises and the less-than-

permanent aggravation of a prior shoulder condition, or very minor injuries, likely

nothing more than the temporary and slight aggravation of pre-existing conditions,

all of which have been held to be *de minimis*.") (internal quotations and citations

omitted); *Johnson v. Jacobson*, No. 3:06-CV-0766-H, 2008 WL 2038882, at *6

(N.D. Tex. Apr. 28, 2008) (finding that a concussion is a serious injury).

    The discrepancies between Plaintiff's description of his injuries and the

medical records establish that a dispute exists concerning Plaintiff's injuries.

Plaintiff's description of his injuries and symptoms is not so blatantly contradicted

by the record that the Court may deem them implausible and disregard them for

purposes of summary judgment.[7]    *See Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F.

App'x. 848, 852 (11th Cir. 2012) ("While it is true that [the inmate's] medical

records do not support the version of the facts he presents in his affidavit, all this

means is that there is conflict in the evidence, which we must resolve at the summary

judgment stage in [the inmate's] favor."); *Bowden v. Stokely*, No. 3:12cv652-J-

---

[7] The Court also notes that treatment records for the day of the incident show that Plaintiff was only given ibuprofen, that no other treatment was provided, and that a physician was not notified. ECF Doc. 132-2 at 3.  However, medical records for June 25, 2016, after he was transferred to Santa Rosa Correctional Institute, show that treatment was provided.  ECF Doc. 132-2 at 1.

99MMH-JRK, 2013 WL 4500462, at *14 (M.D. Fla. Aug. 22, 2013) ("To the extent Plaintiff's allegations concerning the severity of the beating and the claim of multiple injuries may be perceived as somewhat exaggerated and unsupported by the medical records, at this stage of the proceedings, the Court is unwilling to wholly discredit his version of events.").

Indeed, cases addressing similar injuries have declined to find that the injuries are *de minimi*s.  *See e.g., Hudson v. McMillian*, 503 U.S. 1, 10-11 (1992) (holding that blows directed at prisoner, which caused "bruises, swelling, loosened teeth and cracked dental plate," were not *de minimis* for Eighth Amendment purposes); *Wilkins v. Gaddy,* 559 U.S. 34, 38, 40 (2010) (finding district court erred in dismissing plaintiff's complaint based on *de minimis* nature of his injuries, allegations that force caused a bruised heel, back pain and other injuries were sufficient under the Eighth Amendment); *Gomez v. Chandler*, 163 F.3d 921, 922, 925 (5th Cir. 1999) (holding that "cuts, scrapes, contusions to the face, head and body" are more than a *de minimis* injury); *Holloway v. Cohen*, 61 F.App'x 435, 436 (9th Cir. 2003) (holding that allegations that injuries from force included contusions, abrasions and numerous lumps on the plaintiff's head are sufficient to state a claim under the Eighth Amendment).

Accordingly, based on the record before the Court, the undersigned recommends that Defendants' motion for summary judgment as to Plaintiff's claims for compensatory and punitive damages should be denied.

## B. <u>Failure to Protect</u>

Defendants have moved for summary judgment on Plaintiff's failure to protect claim against Defendants Trevino, Sims, Nelson, Tolbert, Cassidy and Bolen, arguing these Defendants cannot be liable for committing excessive force and also for failing to prevent it. A review of Plaintiff's second amended complaint, however, shows that he is asserting a failure to intervene claim against Defendant Smith and Defendant Paul only.[8] ECF Doc. 109 at 16. In his response in opposition, Plaintiff makes it clear that this claim is against Defendants Smith and Paul. ECF Doc. 150 at 11.

As an initial matter, Defendant Smith has not been served and is not a party to the instant motion for summary judgment. Also, it does not appear that Defendant Paul has moved for summary judgment on this claim (even though he is a party to the motion). Regardless, the undersigned finds that Paul is not entitled to summary judgment on Plaintiff's failure to intervene or protect claim. ECF Doc. 132 at 15.

---

[8] Although Plaintiff references Paul as the cameraman in the factual section of his second amended complaint, Plaintiff identifies "unidentified #2" as the defendant under section "VI. Legal Claims – Failure to Retaliate." Unidentified #2 is Tolbert. Paul was unidentified #1. Reading Plaintiff's complaint liberally, referenced to "unidentified #2" appears to be an error.

Case No. 3:15-cv-396-LC-HTC

"[A]n officer can be liable for failing to intervene when another officer uses excessive force." *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000); *see Dukes v. Miami–Dade Cty.*, 232 F. App'x. 907, 913 (11th Cir. 2007) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.") (*citing Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). The officer is only liable if the officer "was in a position to intervene." *Williams v. Scott*, 433 F. App'x 801, 805 (11th Cir. 2011) ("Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence.") (*citing Ensley*, 142 F.3d at 1407). As to Defendant Paul, Plaintiff alleges that Paul "approached the moving procession with a video recorder in hand," and was ordered not to turn the camera on "until we are finished with him, he's going to pay with his face for this one,"– an order which he obeyed. ECF Doc. 109 at 8. Plaintiff further alleges Paul failed to respond to protect him. ECF Doc. 109 at 16. Based on these allegations, which have not yet been disputed by Defendants, a reasonable jury could find that Paul failed to intervene or protect the Plaintiff.

To the extent Plaintiff seeks to hold Defendants Trevino, Sims, Nelson, Tolbert, Cassidy and Bolen for failing to protect or intervene, the undersigned agrees with Defendants that summary judgment is appropriate. In Plaintiffs' second

amended complaint, Plaintiff alleges that Defendants Nelson and Cassidy "grabbed the plaintiff aggressively and placed him in a 'double shoulder bar,'" and subsequently "rammed the plaintiff['s] head into the front door of the medical building." ECF Doc. 109 at 7, 9. Plaintiff claims that Defendants Nelson, Cassidy, Trevino and Sims "piled on top of him repeatedly punching, beating and twisting his body," and that Trevino and Sims "struck the plaintiff on the backside of his head several times . . . ." ECF Doc. 9, 10. He also claims that "Cassidy tried to dislocate[] the bottom jawbone of the plaintiff by pulling it outwards." ECF Doc. 109 at 10. He claims that Bolen "closed his fist and punched the plaintiff on the top of his head with blunt force" and that Cassidy, Nelson, Trevino, Sims and Lee "slammed" him. ECF Doc. 109 at 9. Similarly, in his deposition, Plaintiff claims that Trevino, Sims, Nelson, Tolbert Cassidy, and Bolen punched him everywhere. ECF Doc. 132 at 15.

Defendants Nelson, Cassidy, Bolen, Trevino and Sims cannot be liable for both using excessive force and failing to intervene.[9] This is not a situation where Plaintiff is not certain of who hit him and, thus, is pleading in the alternative.

---

[9] Although Bolen and Sims were not served at the time Defendants' motion was filed, and have since filed an answer (ECF Doc. 145), because the failure to intervene claims are the same as to Bolen and Sims as these Defendants and the basis for granting judgment the same, the undersigned recommends that summary judgment also be entered in favor of Bolen and Sims on the failure to intervene claims.

### C. **Claims Against Assistant Warden Marinin**

Defendant Marinin moves for summary judgment on both the excessive force and failure to protect or intervene claims, arguing that Plaintiff has failed to allege in his complaint or in his deposition that Marinin was involved in the alleged incident.  The undersigned disagrees.

In Plaintiff's second amended complaint, Plaintiff alleges that as he was being escorted to medical by Defendants Nelson and Cassidy, the men encountered Marinin and Carter.  ECF Doc. 109 at 8.  Plaintiff claims Marinin told the officers, "deal with him out of my sight, now!"  *Id.*  Additionally, in Marinin's presence, Carter told the officers to "scrape his head up on the concrete or something.  Scrape his head up.  Make sure you scrape his head up!  I want his head scraped up."  *Id.* Subsequently, Plaintiff passed Marinin again, and Plaintiff claims that Marinin saw for the second time that Plaintiff was being restrained in a double shoulder bar position and gave the officers nods of approval, as if implying "good job," resulting in the officers applying more pressure to the Plaintiff.  ECF Doc. 109 at 12.

The Court finds that these sworn allegations are sufficient to create a question of fact as to whether Marinin should have intervened in the excessive force and whether Marinin may have directed the use of excessive force.  Accordingly, the undersigned recommends that summary judgment be denied as to the excessive force and failure to protect claim against Marinin.

### D. **Conspiracy to Obstruct Justice Claim**

Plaintiff alleges, "Defendants conspired to obstruct justice by creating false, misleading and inaccurate documents and reports to conceal the actual facts of why the use of force was used against the Plaintiff and the surrounding disciplinary reports which resulted in a partial investigation being conducted by the investigator office and Institution where the defendants knew that their actions w[ere] willfully, knowing[ly] and intentionally designed to impede the investigation efforts . . . ." ECF Doc. 109 at 16-17.  He alleges that this conduct violated prison rule chapters 33-601.301(2)[10] and 33-208.002(7), (13) & (20).[11]  *Id.* at 17.

In his deposition, Plaintiff claims Defendant Trevino lied about being injured to cover up his participation in the attack on Plaintiff.  ECF Doc. 132-1 at 18. Plaintiff also claims Defendant Paul was ordered to keep his camera off during the attack and that all the inmates in the medical building were forced to line up facing the walls, so that they could not witness the attack.  *Id.* at 22-23, 29-30, 33.  Plaintiff

---

[10] FDOC Rule 33-601.301(2) states as follows:  "Informal disciplinary intervention consists of group and individual counseling in lieu of formal disciplinary action. These corrective techniques are employed when deviations from rules occur due to lack of understanding or as the result of carelessness or faulty habits, and are designed to eliminate future disciplinary violations and to develop acceptable standards of behavior."

[11] FDOC Rule 33-208.002(7) contains 8 subparts and addresses how to conduct a search of an employee.  Subsection (13) prohibits "Sleeping on duty", and subsection (20) reads as follows: Employees shall not be tardy, absent or depart from work early without the permission of their supervisors and shall observe time limitations on rest and meal periods. Each employee shall notify his immediate supervisor or designated representative prior to his scheduled work shift in the event he expects to be absent from duty due to illness or other reason.

claims Defendants documented the incident as a use of force because "that's the way you cover things up"; they knew there was a possibility that he would "say something or litigate"; and some women witnessed part of the incident. *Id.* at 36, 39. Additionally, Plaintiff claims Bolen told the other officers to stop beating Plaintiff because "the ladies was in there" and Bolen thought they were watching. *Id.* at 40.

Defendants move for summary judgment on two grounds. First, Defendants claim that the allegations are vague and conclusory. Second, they argue that Plaintiff's conspiracy claim is barred by the intracorporate doctrine, which provides that employees of the same entity cannot conspire with one another. In his opposition, Plaintiff argues the comments Defendants made to one another during the excessive force incident show that all Defendants, other than Smith, agreed to "deny Plaintiff his Eighth Amendment Right and his right to seek legal redress by inter alia drafting false reports, conspiring to conceal evidence and knowing or reckless falsities." ECF Doc. 150 at 13.

To prove conspiracy under section 1983, a plaintiff must (1) prove the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) prove an actionable wrong in support of the conspiracy. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.,* 956 F.2d 1112, 1122 (11th Cir.1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication . . .

." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1346 (S.D. Fla. 2012)(quoting *Bailey*, 956 F.2d at 1122).  The first element, however, cannot be met where the alleged co-conspirators are employees of the same entity.  This is true with regard to a claim for conspiracy under § 1983.[12]

"The intracorporate conspiracy doctrine bars conspiracy claims against . . . government actors accused of conspiring together within an organization . . . ." *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012).  Under the doctrine, "employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves…."  *See Dickerson v. Alachua County Com'n*, 200 F. 3d 761, 767 (11th Cir. 2000) ("The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself.").  This doctrine applies to private corporations as well as to public, government entities.  *Grider*, 618 F.3d at 1262-63 (applying intracorporate conspiracy doctrine to conspiracy claims against

---

[12] The Eleventh Circuit has also held that the intracorporate conspiracy doctrine applies to conspiracy to obstruct claims under 28 U.S.C. § 1985(3), which prohibits two or more persons from conspiring to deprive any person equal protection of the laws.  *See Dickerson,* 200 F. 3d at 767 (applying intracorporate conspiracy doctrine to § 1985(3) claim).  Also, a conspiracy claim under section 1985(3) fails for the additional reason that Plaintiff has failed to allege that the obstruction of justice was motivated by some discriminatory animus.  *See* 42 U.S. 1985(3); *see Taylor v. Pekerol*, 760 F. App'x 647, 656 (11th Cir. 2019); *Connor v. Hallifax Hops. Med. Ctr,* 135 F.Supp. 2d 1198, 1220 (M.D. Fla. 2001) (an obstruction of justice claim under §1985(3) against state actors must allege racial or other class-based animus).

police officers); *Claudio v. Crews*, No. 5:13-cv-00345-MP-EMT, 2014 WL 1758106, at \*6 (N.D. Fla. May 1, 2014) (applying intracorporate conspiracy doctrine to FDOC employees).   The doctrine prohibits conspiracy claims when: (1) all defendants are employees of the same entity and (2) the defendants are being sued for employment-related activities.  *Grider*, 618 F.3d at 1261; *Claudio*, No. 5:13-cv-00345-MP-EMT, 2014 WL 1758106, at \*6.   Additionally, the intracorporate conspiracy doctrine prohibits a claim against law enforcement officers for conspiracy in their individual capacities, as well as claims that do not seek to hold the corporate entity itself liable for its agent's activities.  *See Watson v. Edelen*, 76 F.Supp. 1332, 1371 n. 16 (N.D. Fla. 2015).

Here, there is no dispute that all Defendants were employees of the FDOC on June 16, 2015, and there is also no dispute that all Defendants are sued for conduct they carried out as employees of the FDOC.  Thus, the undersigned recommends that Plaintiff's claim for conspiracy against Defendants be dismissed under the intracorporate doctrine.

### E.  **Plaintiff's First Amendment and Fourteenth Amendment Claims**

As stated above, Plaintiff concedes in his opposition to summary judgment that judgment in Defendants' favor is appropriate on both Plaintiff's claim for retaliation and violation of equal protection.  ECF Doc. 150 at 12, ¶¶ VII and VIII.

Thus, the undersigned will not engage in an extensive discussion of these claims but agrees that Defendants are entitled to judgment on them.

### 1.    First Amendment Retaliation Claim

As to his First Amendment retaliation claim, Plaintiff claimed in paragraph 38 of the Second Amended Complaint that Defendant Major Lee violated the First Amendment rights by threatening violence against Gordon for "exercising his right to seek redress from the prison through use of the prison grievance system." ECF Doc. 109 at 16.  Gordon concedes in his opposition to summary judgment, however, that "he cannot demonstrate engagement in protected speech or that any action taken on behalf of defendants was the result of plaintiff engaging in protective speech." ECF Doc. 150 at 12.

To prevail on a First Amendment claim of retaliation, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the adverse effect on protected speech.  *See Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).  "[T]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech."  *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  Here, however, Plaintiff has failed to allege or present evidence showing that Lee's alleged wrongful

conduct toward Plaintiff was motivated by an exercise of protected activity by Plaintiff. Instead, Plaintiff alleges that Lee threatened him after Plaintiff fled from officers. Plaintiff does not allege that Lee retaliated against him *after* Plaintiff filed a grievance, lawsuit or engaged in some other form of protected conduct. *See Pittman v. Tucker*, 213 Fed. App'x 867, 870-71 (11th Cir. 2007) (holding, in a case where an inmate alleged that prison officials made threats of physical harm to him *after* he filed grievances, that the inmate had alleged enough to make it through summary judgment stage).

### 2.    Fourteenth Amendment Equal Protection Claim

As to his Fourteenth Amendment due process claim, Plaintiff claims that Defendant Bolen used racial epithets against Gordon during the physical assault conducted by white males, which "aggravated the Eighth Amendment Excessive use of force that occurred, and such behavior amounts to a separate equal protection violation." *Id.* at 17. Gordon concedes in his opposition, however, that this claim is "without legal merit," and that "Plaintiff, pro se litiga[nt,] misinterpreted the legal standard for this claim." ECF Doc. 150 at 12.

"To establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir.

2001) (quoting *Damiano v. Florida Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)).  Plaintiff, however, has not alleged facts or presented any evidence from which a reasonable juror could conclude that he has established those elements. He has not identified any "similarly situated" prisoners who received more favorable treatment.[13]  In other words, he has not identified (or alleged) that another prisoner, also running away from officers to create a disturbance because he was in possession of contraband, was treated more favorably simply because he was of a different race than Plaintiff.  *See Brunskill v. Boyd*, 141 Fed. App'x 771, 776 (11th Cir. 2005) ("[plaintiff] failed to establish an equal protection claim as he offered no evidence that other similarly situated prisoners were treated more favorably").

## IV.    PLAINTIFF'S NOTICE TO THE COURT

Contemporaneously with his opposition, Plaintiff also submitted a "Notice to the Court," in which he states that he has been unable to obtain his medical files from officials.  ECF Doc. 151.  Plaintiff provides no evidence of what he has done to try to acquire these records.  Moreover, Plaintiff could have sought these records from the Defendants or sought to have a subpoena issued to the FDOC.  There is no evidence that Plaintiff made any such discovery attempts.  As this Court previously

---

[13]  Because Plaintiff has failed to identify any similarly situated persons who were treated differently, Plaintiff's claim would also fail under a "class of one" equal protection analysis.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding, a homeowner could assert an equal protection claim predicated on an easement dispute with the village he lived in).

advised Plaintiff in its Order on Plaintiff's Motion to Confiscate his medical records (ECF Doc. 149), any discovery issues should have been raised to the Court prior to the discovery deadline.  Thus, the Plaintiff is once again advised that the Court will not address any discovery issues sought to be raised by Plaintiff's Notice.  Moreover, as Local Rule 7.1 provides, any request for relief must be made by an appropriate motion.

## V.    CONCLUSION

Accordingly, it is respectfully RECOMMENDED that:

1.    Defendants' Motion for Summary Judgment be DENIED as to Plaintiff's claim for compensatory and punitive damages for violating his Eighth Amendment rights.

2.    Defendants' Motion for Summary Judgment be DENIED as to Plaintiff's claim against Defendant Marinin.

3.    Defendant's Motion for Summary Judgement be GRANTED as to Plaintiff's failure to intervene/protect claim against all Defendants, EXCEPT Marinin and Paul.

4.    Defendants' Motion for Summary Judgment be GRANTED as to Plaintiff's claims for retaliation (First Amendment claim), violation of his rights to equal protection (Fourteenth Amendment claim), and conspiracy to obstruct justice.

5.    That the matter be referred to the undersigned for further pretrial proceedings.

DONE AND ORDERED this 9th day of December, 2019.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.